**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **1:22CR25** |
| | : | |
| **JOHN F. COCHCROFT** | : | |

**UNITED STATES SENTENCING MEMORANDUM**

In accordance with the sentencing factors set forth at 18 U.S.C. § 3553(a), the United States respectfully submits this sentencing memorandum. Because Mr. Cochcroft put greed over the health and safety of consumers, knowingly defrauded the government and misled consumers by various means of deceit, and displayed utter contempt for the law, the United States respectfully submits that a departure from the sentencing guidelines is not appropriate. In fact, Mr. Cochcroft's case demonstrates why the goal of general deterrence is not served by downward departures from the sentencing guidelines; he is precisely the type of person that can be deterred by news of adequate punishment. The United States thus requests that this Court sentence Mr. Cochcroft to a term of imprisonment for his conviction. Additional reasons are set forth herein.

**I.      Factual and Procedural Background**

On May 23, 2022, Mr. Cochcroft pleaded guilty to an Information charging him with one count of introducing an unapproved new drug into interstate commerce

with the intent to defraud or mislead, in violation of 21 U.S.C. §§ 331(d), 355, and 333(a)(2), and one count of knowingly and intentionally manufacturing, distributing, and possessing with intent to distribute anabolic steroids, Schedule III controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(E), and 846. ECF 29 at 14-19. Mr. Cochcroft was responsible for selling dangerous synthetic steroid-type drugs known as Selective Androgen Receptor Modulators ("SARMs") across the United States and then, when his main buyer quit buying SARMS, he began actually manufacturing actual steroids. In doing so, he misled the FDA and consumers by using different mailing addresses with fictitious business names to bring in the raw drug ingredients, working with Chinese suppliers to mislabel imported drug products as foodstuff items, and knowingly failing to obtain regulatory approval for the above products. ECF 29 at ¶ 11. In total, Mr. Cochcroft sold at *least* $500,000 worth of unlawful products through retail outlets and over the internet.[1]

The plea agreement specifies the applicable Sentencing Guidelines. *See* ECF 30 at 3. The PSR holds Mr. Cochcroft accountable for manufacturing and possessing at least 60,000 units or more of a Schedule III controlled substance (Base Offense Level 20) and maintaining a premises for the purpose of manufacturing a controlled substance. *See* U.S.S.G. § 2D1.1(c)(10), (b)(12). The PSR further places Mr.

---

[1] The Government's multi-year investigation of Mr. Cochcroft revealed that he sold most of these products through defunct businesses he created for the purpose of manufacturing and distributing bodybuilding supplements and dietary supplements throughout the United States. ECF 29 at ¶ 11.

Cochcroft in Criminal History Category I and a Guidelines Range of 24-30 months. PSR at ¶ 72. Mr. Cochcroft agreed to and has paid $200,000 in forfeiture prior to sentencing. ECF 30 at 8. This Court is scheduled to sentence Mr. Cochcroft on August 25, 2022.

## II.   Statutory Penalties

As to count one, Mr. Cochcroft pleaded guilty to a felony FDCA charge requiring the intent to "defraud or mislead." 21 U.S.C. § 333(a)(2). Felony FDCA charges incur a maximum prison sentence of not more than three years. *Id*. For individuals, the maximum fine for this offense is $250,000. *See* 18 U.S.C. § 3571(b). As to count two, the maximum term of imprisonment is 10 years. 21 U.S.C. § 841(b)(1)(E). The maximum fine is $500,000. 18 U.S.C. § 3571(b).

## III.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In sentencing Mr. Cochcroft for his actions, this Court must consider: the nature and circumstances of the offense and history and characteristics of the defendant, § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6). The Court must adopt a sentence within the United States Sentencing Guidelines unless it "finds that there exists an aggravating

or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1). Here, all of the Section 3553(a) factors weigh in favor of incarceration, and no circumstances warrant a departure from the Sentencing Guidelines.

### A. The Nature and Circumstances of the Offense and Defendant

The Court should consider the "nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). In this case, Mr. Cochcroft was responsible for the distribution of dangerous steroid drugs for years, and he remained undetected in part because he deliberately hid—and directly lied about—his role in their distribution. Mr. Cochcroft's knowing sale of these potentially deadly products, brazen defrauding of the FDA and consumers, and total disregard for the law all demonstrate the nature and circumstances of the offense and warrant incarceration.

First, there is no dispute Mr. Cochcroft's products contained ingredients that can seriously injure or even kill consumers. These ingredients included steroid-like substances, including Ostarine (a.k.a. MK-2866), and anabolic steroids including testosterone decanoate, testosterone propionate, trenbolone acetate Methandrostenolone). As the FDA has long warned, the use of anabolic steroids and steroid-like substances can have life-threatening consequences:

> [Anabolic steroids] are known to have a range of serious adverse effects on many organ systems, and in many cases the damage is not reversible. They include fertility problems, impotence, high blood pressure and cholesterol, and heart and liver abnormalities.[2]

Mr. Cochcroft seeks to minimize his conduct by claiming the products he sold were simply cosmetic, muscle-building substances. ECF 40 at 2, 3, 11, 12, 16. This is not true. They are dangerous products with life altering consequences, and as explained herein, Mr. Cochcroft manufactured them in a shamefully non-compliant facility.

Second, there is no dispute Mr. Cochcroft knew that he could not sell these dangerous products. Accordingly, he took great pains to hide is illicit conduct. For example, Mr. Cochcroft used numerous different addresses to bring the illegal raw drug materials into the country, as the following emails sent between him and a Chinese manufacturer ("Spring" or "SC") demonstrate:

---

[2] *Teens and Steroids: A Dangerous Combo*, U.S. Food and Drug Administration, https://www.fda.gov/consumers/consumer-updates/teens-and-steroids-dangerous-combo (last updated 12/04/2017); *Caution: Bodybuilding Products Can Be Risky*, U.S. Food and Drug Administration, https://www.fda.gov/consumers/consumer-updates/caution-bodybuilding-products-can-be-risky (last updated 5/11/2022); *North Carolina Sport Supplement Company and Its Owner Plead Guilty to Unlawful Distribution of Steroid-like Drugs*, U.S. Food and Drug Administration, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/press-releases/north-carolina-sport-supplement-company-and-its-owner-plead-guilty-unlawful-distribution-steroid ("The FDA has long warned against the use of SARMs[.]") (last updated 02/09/2021).



Mr. Cochcroft even went as far as to demonstrate his knowledge of the exact drug schedule for some of his illicit products and that a seizure linked to him could cause unwanted attention and cause "the DEA and other government officials" to come his way:



Further evidence demonstrates that Mr. Cochcroft also took measures to ensure the illicit drugs were hidden in packages in case the government inspected them, as one image sent by a Chinese manufacturer shows:



And, as Mr. Cochcroft's messages illustrate, he knowingly took steps to set up a website that could not be easily linked to him:



Mr. Cochcroft minimizes his conduct by claiming he is different from a client this court convicted, Mr. Parks, because Mr. Parks's website contained falsehoods. ECF 40 at 19. Obviously, Mr. Cochcroft intended to set up a similar scheme where he could operate a website to sell illicit drugs with impunity. Such conduct warrants a custodial sentence.

Third, Mr. Cochcroft's utter contempt for the law further warrants a custodial sentence. As Mr. Cochcroft himself explained in messages provided here: "Who cares about the FDA." He knew exactly the type of punishment he faced, but his greed outweighed consumer safety and respect for the law:



Finally, Mr. Cochcroft knew his facility was not registered with the FDA, and utilizing unregulated manufacturing practices creates the risk of serious health consequences for consumers because of the potential for impurities contained in the

active or inactive ingredients, which can include residual chemicals used in producing the ingredients; machinery contaminated with rodenticides, insecticides, cleaning agents, or residual chemicals from a previous product; a failure to certify the identity and purity of the ingredients used in manufacturing the product; and a failure to certify that the final product contains the appropriate amount of the active ingredient and that any impurities are within a prespecified limit. Yet Mr. Cochcroft was taking none of these precautions, as photos from his facility demonstrate:




 

The shameful condition of Mr. Cochcroft's facility is a damning fact this Court should not ignore. Unregistered drug manufacturers are not merely violators of obscure technical violations. The FDA regulates the sale of drug products to ensure that they have the strength, quality, and purity characteristics they claim to have. When these drugs do not have those characteristics, it increases the risk consumers will overdose to get the perceived benefit of the drug. Even if Mr. Cochcroft is correct to cite a 2007 study to support that his products likely went only to weightlifters and fitness consumers, ECF 40 at 15-16, Mr. Cochcroft still allowed

his greed to put them at risk of serious injury.

Mr. Cochcroft's letters of support indicate that he, like most people, may have positive attributes. ECF 40 at 4-11. Accordingly, he is precisely the type of person that can be deterred by news of adequate punishment. Clearly, the sentences imposed in the past in similar cases were insufficient to deter Mr. Cochcroft and, presumably, are insufficient to deter similarly situated potential wrongdoers. Also, Mr. Cochcroft argues that paying $200,000 in forfeiture is a basis for a non-custodial sentence. Mr. Cochcroft admits he sold more than half a million dollars in products. Paying back a fraction of his criminal proceeds should not garner him a badge of honor. Given the inherent dangerousness of the products he sold, his contempt for the law, and his repeated and deliberate deceit, the nature and circumstances of the offense and defendant weigh in favor of incarceration.

### B. The Need for the Sentence to Afford Adequate Deterrence

This Court's sentence must "afford adequate deterrence to criminal conduct." 18 U.S.C. 3553(a)(2)(B). Indeed, in white collar cases, general deterrence is possibly the most important factor this Court must consider. Here, the demands of general deterrence weigh in favor of incarceration, as they do for nearly every case involving the sale of deadly misbranded drugs. Courts can only deter greed-driven violators like Mr. Cochcroft if they impose sentences significant enough to appropriately punish this kind of conduct. The history of these types of cases demonstrates that, so

far, the sentences imposed have not served the goal of general deterrence. After Mr. Cochcroft's former primary purchaser, Brian Parks, was sentenced to 12 months and 1 day, Cochcroft manufactured and sold steroids. For Mr. Cochcroft, the risk of a sentence of one year was not sufficient to deter him when balanced again the easy profits gained from his illicit conduct.

Mr. Cochcroft claims that general deterrence is served by a lenient sentence because word travels fast in the fitness community. ECF 40 at 15. This claim is either incorrect or demonstrates the need for a custodial sentence here. Steroids cases—whether they involve SARMs or anabolic steroids—are every bit as prevalent today as they were five years ago. Given the lack of adequate government resources, the probability of a steroid manufacturer being prosecuted is very low. Why would anyone stop manufacturing illegal drugs when the likelihood of being caught is small, and, if you are caught, your punishment is having to pay back some of your ill-gotten gains and being placed on probation? To have some chance of stopping this conduct, a custodial sentence should be imposed.

Like most defendants in the supplement business, the defendant is intelligent and well-educated. He knew better. The sentence should not only reflect the seriousness of the crime, but adequately impress on those who might be tempted to commit these crimes the serious repercussions of such conduct. As this Court has noted, if the law is not enforced, it is a dead letter. Those who break the law must

face real consequences.

### C. The Need to Avoid Unwarranted Sentencing Disparities

The Court should consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" *See* 18 U.S.C. § 3553(a)(6). Here, the Government's recommended sentence reflects the seriousness of Mr. Cochcroft's crimes and is not out of line with sentences imposed in similar cases throughout the country. The sale of SARMs and other mislabeled products is a major problem in the Western District of Virginia and across the United States, and several individuals have been prosecuted for violating the Food, Drug, and Cosmetic Act by engaging in similar conduct. Those cases include:

a. In 2016, this Court sentenced Steven Donald Wood to probation for his role in manufacturing and shipping illegal designer steroids throughout the United States. The Court also ordered Wood to forfeit $1.5 million which had been paid prior to Wood pleading guilty and pay a fine of $10,000. Like Mr. Cochcroft, Wood distributed misbranded products, including those he falsely labeled as a "dietary supplement." Unlike here, the Government in *Wood* sought a reduced sentence based on Wood's extraordinary assistance in the investigation and prosecution of others. *See U.S. v. Wood*, 1:16-cr-00007 (2016). ECFs 1, 5, 22.

b. In 2019, Scott Edward Cavell was sentenced to 36 months' imprisonment in the District of California for causing misbranded drugs to be introduced into commerce, including 2,4-Dinitrophenol, a dangerous weight loss supplement. Like Mr. Cochcroft, Cavell falsely marketed illegal drugs. Cavell collected at least $763,000 from the scheme. *See U.S. v. Cavell*, 2:19-cr-33 (E.D. Cal. 2019), ECF 24.

c. In 2021, Sitesh Patel, the Vice President of the dietary supplement company USP Labs, was sentenced a second time to 41 months' imprisonment in the Northern District of Texas. Like Mr. Cochcroft, Patel played a key role in developing and manufacturing workout supplements, and he used false and misleading labeling to avoid law enforcement and regulatory agency attention. Other defendants in the scheme received significant sentences for their roles: the CEO of USP Labs LLC was sentenced to 60 months' imprisonment, and the president of USP Labs LLC was sentenced to 24 months' imprisonment. Unlike Mr. Cochcroft, the defendants' company paid $4.7 million in criminal forfeiture. *See U.S. v. USP Labs LLC et al*, 3:15-cr-496 (2015), ECF 1052.[3]

---

[3] This Court also sentenced Patel to eight months' imprisonment for his role in a conspiracy to misbrand synthetic steroids as "dietary supplements" when, in fact, they were drugs. Patel forfeited $77,000 and was fined $50,000. *See* 1:16cr34 (2016), ECF 144. The conduct that in Texas that led to his 2021 conviction occurred prior to his conviction in this Court.

d. In 2021, this Court sentenced Brett David Becker to one year of probation. Like Mr. Cochcroft, Becker used deception by misrepresenting his products as dietary supplements to create the impression that they were safe and legal to use. Unlike Mr. Cochcroft, Becker did not plead to also manufacturing and distributing anabolic steroids, and he was ordered to pay a large forfeiture money judgement of $3,531,055. *See U.S. v. Becker*, 1:20-cr-00049 (2021), ECFs 33-34.

e. In 2021, this Court sentenced James Chadwick Brooks to one year of probation. Like Mr. Cochcroft, Brooks used his company to sell misbranded body-building drugs across the United States. Unlike Mr. Cochcroft, Brooks did not plead guilty to a charge of illegally manufacturing and distributing anabolic steroids, and his plea—which occurred months before the search warrant on Mr. Cochcroft's facility—demonstrates that law enforcement action did not have a deterrence effect despite Mr. Cochcroft's claim that word of prosecutions travels quickly in the fitness community. *See U.S. v. Brooks*, 1:21-cr-00034 (2021), ECFs 1, 36.; ECF 40 at 15.

f. In 2021, this Court sentenced Brian Parks to 12 months and 1 day in prison. Mr. Cochcroft directly manufactured violative products for Parks that Parks then sold and distributed. ECF 40 at 11-12. Like Mr. Cochcroft,

    Parks also admitted that he intended to mislead and defraud the FDA and consumers. Unlike Mr. Cochcroft, Parks did not plead to manufacturing and distributing anabolic steroids, and—crucially—Parks was serving his sentence *during* the time the Government executed a search warrant on Mr. Cochcroft's facility, yet Mr. Cochcroft did nothing to change his behavior despite his contention that word travels quickly in the fitness community. *See U.S. v. Parks*, 1:20-cr-00046 (2020), ECFs 27-30.

g. In 2022, this Court sentenced Nicholas Puccio to eight months in prison. Like Mr. Cochcroft, Puccio also admitted that he intended to mislead and defraud the FDA. Unlike Mr. Cochcroft, Puccio did not plead to manufacturing and distributing anabolic steroids. *See U.S. v. Puccio*, 1:21-cr-00031 (2021), ECF 28.

These sentences demonstrate a long history of serious and ongoing violations by individuals who distribute misbranded health products that can injure and even kill consumers. The Government continues to believe that the kinds of acts committed by Mr. Cochcroft generally warrant guidelines sentences. Accordingly, the Government respectfully requests that the Court sentence Mr. Cochcroft to a term of imprisonment.

## IV. Conclusion

Sentencing requires that the Court carefully balance the factors set forth in 18 U.S.C. § 3553(a). As detailed above, those factors, on balance support, a sentence of incarceration. Such a sentence reflects the seriousness of the offense, deters others, avoids unwarranted sentencing disparity, and promotes respect for the law.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

GUSTAV W. EYLER
Director
Consumer Protection Branch
U.S. Department of Justice

/s/ Speare Hodges
SPEARE I. HODGES, DC Bar # 888242461
Trial Attorney, Consumer Protection Branch
United States Department of Justice
450 5th Street, N.W. Ste. 6400-South
Washington, DC 20001
(202) 532-4176 / (202) 514-8742 fax
Speare.i.hodges@usdoj.gov

RANDY RAMSEYER, VA Bar # 33837
U.S. Attorney's Office
180 West Main Street
Abingdon, Virginia 24210
276-628-4161 / 276-628-7399 (fax)
USAVAW.ECFAbingdon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to defense counsel.

<u>/s/ Speare Hodges</u>
Trial Attorney